IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Newfield Production Company, | ) |
| | ) |
|       Plaintiff, | ) |
| | )   **ORDER** |
| v. | ) |
| | ) |
| Eighty-Eight Oil LLC, | ) |
| | )   Case No.: 1:16-cv-273 |
|       Defendants. | ) |

Before the court is Plaintiff Newfield Production Company ("Newfield")'s Motion for Leave to File Third Amended Complaint. (Doc. No. 30). In the motion, Newfield requests the court's leave to allow it to file an amended complaint containing a new claim for fraud and a claim for punitive damages. Eighty-Eight Oil LLC ("Eighty-Eight") opposes the motion. (Doc. No. 31).

**I. BACKGROUND**

Eighty-Eight is a shipper of crude oil in North Dakota and the western United States. In 2011, Eighty-Eight was exploring the feasability of building another pipeline in North Dakota. In furtherance of that end, Eighty-Eight reached out to various oil producers in North Dakota to gauge interest and secure commitments of oil that would be sent through that pipeline. Eighty-Eight and Newfield signed a "Crude Oil Volume Commitment Sales Agreement" ("Sales Agreement") in December 2011. (Doc. No. 30-3). Generally speaking, the Sales Agreement obligated Newfield to sell a specific volume of crude oil to Eight-Eighty at a price to be determined by Section 4(a) of the Sales Agreement, which dictated Eighty-Eight was to pay Newfield a price equal to:

> The average of the daily settlement price of the NYMEX near month WTI crude oil contract as it trades for the calendar month of delivery, excluding weekends and holidays, gravity deemed 40 degree API, EDQ, minus Eighty-Eight's differential for NDL (North Dakota Light) type crude oil, minus all transportation from Guernsey, Wyoming, back to the point of purchase, and less a marketing fee of $0.85 per barrel

  minus transportation charges if the barrel is trucked from the wellhead to the Carrier Line inlet flange, if applicable.

(Doc. No. 30-3 p. 3). This litigation focuses upon how Eighty-Eight interpreted and applied the "differential for NDL (North Dakota Light) type crude oil" clause of Section 4(a) (hereinafter the "NDL differential") to the amounts it paid Newfield under the Sales Agreement.

  Newfield initiated this action on July 22, 2016, asserting one claim for breach of contract. (Doc. No. 1). Newfield alleged Eighty-Eight applied the NDL differential in a commercially unreasonable manner in determining the amount to be paid to Newfield. Among other requested forms of relief, Newfield sought monetary compensation for the alleged breach. (Doc. No. 1). Before Eighty-Eight answered, Newfield filed its First Amended Complaint. (Doc. No. 7). The First Amended Complaint was, in substance, analogous to Newfield's original complaint in that it did not allege any additional counts against Eight-Eight, but contained a more fleshed out factual predicate for the breach of contract claim. Following Eighty-Eight's answer, (Doc. No. 9), the court entered a scheduling order, under which discovery is due September 25, 2017, with dispositive motions due October 27, 2017. (Doc. No. 16). Trial is currently set for June 4, 2018. (Doc. No. 18).

  Upon stipulation of the parties, the court allowed Newfield to file a Second Amended Complaint. (Doc. No. 26). In the Second Amended Complaint, Newfield retooled its breach of contract claim and added a second breach of contract claim. Newfield's first claim alleges Eighty-Eight breached the Sales Agreement by not properly calculating the price to be paid to Newfield under Section 4(a). Newfield's second claim alleges Eighty-Eight breached its duty of good faith imposed under North Dakota law by paying Newfield a commercially unreasonable price.

  In the motion currently before the court, Newfield seeks the court's leave to file a Third

Amended Complaint. Newfield has provided the court with a copy of its proposed complaint. (Doc. No. 30-2). The proposed complaint realleges the two breach of contract claims set forth in the Second Amended Complaint. Additionally, the proposed complaint contains a third claim for "actual fraud" based upon Eighty-Eight allegedly not disclosing to Newfield how it understood the NDL differential would operate. Specifically, the proposed fraud claim reads:

## COUNT THREE

## ACTUAL FRAUD

21.

Newfield re-alleges and incorporates the allegations contained in paragraphs 1-20 above.

22.

Eighty-Eight committed actual fraud against Newfield when, to induce Newfield to enter into the Sales Agreement, Eighty Eight suppressed the material fact that it believed it had "complete discretion" over how Eight-Eight calculated the NDL differential, including "complete discretion" over the sales included in the calculations of the NDL differential and the costs deducted when calculating the NDL differential.

23.

As demonstrated by the way Eighty-Eight calculated the NDL differential for the purchase contracts already in effect during the negotiations with Newfield, as well as Eight-Eight's recent deposition testimony, Eighty-Eight believed when it was negotiating the Sales Agreement with Newfield that Eighty-Eight had "complete discretion" over how it calculated the NDL differential, including "complete discretion" over the sales included in the calculation of the NDL differential and the costs deducted when calculating the NDL differential.

24.

Eighty-Eight never told Newfield during the negotiations that it believed it had "complete discretion" over how Eighty-Eight calculated the NDL differential, including "complete discretion" over the sales included in the calculation of the NDL differential and the costs deducted when calculating the NDL differential.

25.

Had Newfield known before signing the Sales Agreement that Eighty-Eight believed it had "complete discretion" over how it calculated the NDL differential, including "complete discretion" over the sales included in the calculation of the NDL differential and the costs deducted when calculating the NDL differential, Newfield would not have entered into the Sales Agreement.

26.

Eighty-Eight's actual fraud caused Newfield harm.

(Doc. No. 30-2). Newfield parlays this fraud claim into a request to allow it to assert a claim for punitive damages under N.D.C.C. § 32-03.2-11. In the proposed Third Amended Complaint, Newfield only seeks monetary compensation; it does not seek rescission of the Sales Agreement.

**II.     DISCUSSION**

Newfield argues the court should grant its motion because it only recently learned of the information giving rise to the fraud claim. (Doc. Nos 30, 32). Newfield also argues the amending is appropriate because the fraud claim largely turns on the same facts and documents animating the two breach of contract claims already before the court, thereby causing little prejudice to Eighty-Eight in the form of additional discovery. Eighty-Eight opposes the motion, arguing Newfield was dilatory in investigating and asserting the fraud claim, allowing the claim to go forward would cause prejudice by requiring new discovery, and the claim would be futile. (Doc. No. 31).

A. Standard

Under Fed.R.Civ.P. 15(a)(2), "a party may amend its pleading only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." As explained by the Eighth Circuit Court of Appeals: "absent a good reason for denial—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the non-moving party, or futility of amendment—leave to amend should be granted." Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989).

### B. Newfield's Claim is Futile.

"[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion, Fed.R.Civ.P. 12 . . . .". In re Senior Cottages of America, LLC, 482 F.3d 997, 1001 (8th Cir. 2007). The futility inquiry asks "whether the proposed amended complaint states a cause of action under the [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2009)] pleading standard . . . ." Zutz v. Nelson, 601 F.3d 842 (8th Cir. 2010). Under this standard, the court must assume all facts alleged in the complaint as true to determine whether those same facts state a plausible claim for relief. Id.

*1. Fraud v. Deceit*

At the outset, the court is not bound to take Newfield's characterization of the proposed claim as one for "actual fraud" at face-value. Newfield's proposed "actual fraud" claim, in essence, asserts: (1) Eighty-Eight understood the Sales Agreement provided it with complete discretion in calculating the NDL differential; (2) Eighty-Eight did not convey that understanding to Newfield at the time the parties executed the Sales Agreement; (3) Newfield would not have executed the Sales Agreement if Eighty-Eight conveyed its understanding; and (4) Newfield suffered an injury. Newfield only seeks monetary damages; it does not seek rescission of the Sales Agreement.

According to the North Dakota Supreme Court, a "party who has been induced to enter a contract by fraudulent misrepresentations may elect to rescind the contract, or to affirm the contract and recover damages." Holverson v. Lundberg, 2016 ND 103, ¶ 15, 879 N.W.2d 718 (internal citations omitted). By solely seeking monetary damages rather than rescission, Newfield has tacitly

affirmed the validity of the Sales Agreement.  With this election, Newfield positions its "actual fraud" claim into an ongoing debate about whether such a claim should be considered one for fraud under N.D.C.C. ch. 9-03 or for deceit under N.D.C.C. ch. 9-10.  <u>Erickson v. Brown</u> 2008 ND 57, ¶ 62, 747 N.W.2d 34 (Crothers, J., concurring and dissenting in part) (observing fraud "is a claim arising in contract and relates to the lack of consent. One asserting fraud seeks to avoid a contract by showing consent is lacking due to misrepresentation. Fraud, and its remedy of rescission, requires placement of the parties back to their original positions. . . A deceit claim can be brought within a contractual relationship by a person who ratifies a contract after learning of the fraud of another or can be brought by parties who have no contractual relationship. In deceit, a plaintiff may sue to recover any damages proximately caused by reliance on the misrepresentation.").

Based upon the posture and nature of this claim, the court has doubts about whether Newfield's proposed claim should be considered one for actual fraud under N.D.C.C. ch. 9-03 or for deceit under N.D.C.C. ch. 9-10.  This distinction is not without consequence given the varying standards and remedies available for the two claims.  <u>Compare</u> N.D.C.C. ch. 9-03 with N.D.C.C. ch. 9-10.  Giving Newfield the benefit of the doubt, the court will construe the claim as if it raises a claim for both actual fraud and deceit and address each in turn.

*2. Any "Actual Fraud" Fails*

Newfield's claim for actual fraud rests on N.D.C.C. § 9-03-08(3).  This subsection defines actual fraud as the "suppression of that which is true by one having knowledge or belief of the fact . . . ."  The North Dakota Supreme Court has defined "suppression" within the meaning of N.D.C.C. § 9-03-08(3) as being synonymous with "concealment."  <u>Adams v. Little Missouri Minerals Ass'n</u>, 143 N.W.2d 659, 681 (N.D. 1966) (observing a court is to provide relief against fraud that "it is

committed by suppression of the truth—that is, by concealment . . . ."). "Suppression" may, according to the court, include failure to disclose a fact that "a party is bound in good faith to disclose." See Diemert v. Johnson, 299 N.W.2d 546, (N.D. 1980)

Newfield's claim for actual fraud under N.D.C.C. § 9-03-08(3) alleges "Eighty-Eight suppressed the material fact that it believed it had 'complete discretion' over how Eight-Eight calculated the NDL differential." (Doc. No. 30-2). The claim further alleges "Eighty-Eight never told Newfield during the negotiations that it believed it had 'complete discretion' over how Eighty-Eight calculated the NDL differential . . . ." (Doc. No. 30-2). Distilled to its essence, Newfield's actual fraud claims alleges Eighty-Eight suppressed its understanding when it did not, upon its own volition, volunteer its understanding during the parties' negotiations.

Implicit within this allegation is the premise Eighty-Eight was under some duty to disclose its understanding of how the NDL differential would operate and its failure to do so constituted "suppression" under N.D.C.C. § 9-03-08(3). Newfield has not demonstrated any duty exists under North Dakota law requiring one contracting party in an arms-length transaction to disclose its interpretation of the contract to the other. Other federal courts have rejected this idea. Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1021 (8th Cir. 2001) (stating "Children's claim that ABC Radio should have disclosed its interpretation of the confidentiality provision makes little sense. We see no support in Minnesota law for imposing a duty on sophisticated parties negotiating a contract at arms' length to disclose their particular interpretations of its provisions."); see also Spaulding v. Abbot Laboratories, No. 10 C 199, 2010 WL 4822894 at *9 (E.D. Ill. Nov. 22, 2010) (observing, as "Abbott correctly notes, Spaulding's fraudulent inducement claim rests on the premise that Illinois law imposed upon Abbott a duty, during an arms-length negotiation where Spaulding

was represented by counsel, to disclose its interpretation of the parties' contracts. That premise is incorrect."); DTS, Inc. v. Nero AG, Case No. CV 14-09791-RGK, 2015 WL 12746713 at *9 (C.D. Cal. August 5, 2015) (observing " Nero does not cite any authority for the proposition that a party to an arms-length transaction owes a duty to disclose its interpretation of a contract provision to the other party."). If this duty existed, any dispute regarding contractual interpretation could include competing claims of fraud. As one court persuasively reasoned in rejecting the principle at the heart of Newfield's proposed claim:

> If parties had a duty to disclose their respective interpretations of a contract during negotiation or prior to execution, every breach of contract lawsuit—at least those turning on disputes over the contract's meaning—would be a fraud lawsuit as well, as the plaintiff could charge that the defendant failed to reveal its interpretation of the disputed provision and that the plaintiff would not have executed the contract had it only known the defendant's interpretation.

Spaulding, 2010 WL 4822894 at *9. In sum, Newfield has not demonstrated Eighty-Eight was under any duty to disclose its interpretation of the NDL differential.

With this failure, Newfield has not alleged facts showing Eighty-Eight engaged in "suppression" under N.D.C.C. § 9-03-08(3). It also has not argued any of the other provisions from N.D.C.C. § 9-03-08 apply in this instance. Newfield, therefore, has not stated a plausible claim for actual fraud under N.D.C.C. § 9-03-08, specifically N.D.C.C. § 9-03-08(3). On this basis, allowing Newfield to amend its complaint to include a claim for actual fraud would be futile.

### 3. Any Deceit Claim Fails

Any deceit claim Newfield may have fails for the same reasons expressed above. Under N.D.C.C. § 9-10-02(3), deceit may occur by "suppression of a fact by one who is bound to disclose it . . . ." Just as Newfield failed to demonstrate Eighty-Eight was under a duty to disclose its

understanding of the NDL differential with regard to its fraud claim, it has failed to do so with any deceit claim. See Hellman v. Thiele, 413 N.W.2d 321, 327 (N.D. 1987) (observing the plaintiffs "cite no statute, rule, or other authority whatsoever which indicates that the Bank had a duty to [disclose]. Only if such a duty existed can the Bank be held liable in [deceit] for its failure to disclose . . . ."). Thus, Newfield has not stated a plausible claim for deceit under N.D.C.C. § 9-10-02(3).

*4. Any Claim for Punitive Damages Fails*

Under N.D.C.C. § 32-03.2-11, punitive damages are available in "any action for the breach of an obligation not arising from contract[] when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or actual malice . . . ." The North Dakota Supreme Court has interpreted the term "fraud," as used within N.D.C.C. § 32-03.2-11, to include deceit. Dewey v. Lutz, 462 N.W.2d 435, 442 (N.D. 1990) (holding "for purposes of the punitive damages statute, fraud and deceit are synonymous."). The viability of a claim for punitive damages is predicated on the viability of the underlying claim for oppression, fraud, or actual malice. Because Newfield has not stated a plausible claim for fraud, whether that be for actual fraud or deceit, it also has not stated a plausible claim for punitive damages under N.D.C.C. § 32-03.2-11, rendering the claim futile.

**III. CONCLUSION**

Because the proposed "actual fraud" claim, no matter how construed, would be futile, the court need not reach the other arguments presented. The current motion is little more than Newfield attempting to use the prospect of punitive damages as leverage over Eighty-Eight. Based on the foregoing, the court **DENIES** Newfield's Motion for Leave to File Third Amended Complaint. (Docket No. 31).

**IT IS SO ORDERED.**

Dated this 22nd day of September, 2017.

                                                */s/ Charles S. Miller, Jr.*
                                                Charles S. Miller, Jr., Magistrate Judge
                                                United States District Court