IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| Newfield Production Company, | ) | Case No.:   1:16-cv-00273-DLH-CSM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| vs. | ) | **EIGHTY-EIGHT OIL LLC'S MOTION TO** |
| | ) | **EXCLUDE NEWFIELD PRODUCTION** |
| Eighty-Eight Oil LLC, | ) | **COMPANY'S REBUTTAL EXPERT** |
| | ) | **OPINIONS, REPORTS AND TESTIMONY** |
| Defendant. | ) | |

Defendant Eighty-Eight Oil LLC ("Eighty-Eight") submits this brief in support of its motion to exclude Newfield Production Company's ("Newfield") rebuttal expert opinions, reports and testimony. On September 11, 2017, more than two months after Newfield's deadline to name its experts and complete reports, Newfield identified three "rebuttal" experts. Eighty-Eight moves to exclude Newfield's rebuttal expert opinions, reports and testimony because: (1) Newfield's "rebuttal" expert disclosures are untimely; (2) Newfield's untimely disclosures were not harmless or substantially justified; and (3) the reports exceed the scope of "rebuttal."

## BACKGROUND

The Court's Scheduling Order imposed specific deadlines for Eighty-Eight and Newfield to disclose their respective experts, complete fact discovery and file dispositive motions. (Doc. #16, Scheduling Order at ¶¶ 3-10). The schedule adopted by the Court was negotiated and agreed to by Eighty-Eight and Newfield pursuant to the Federal Rules of Civil Procedure and states the following:

- The parties shall provide the names of expert witnesses and complete reports under Rule 26(a)(2) as follows:

       Plaintiff:     Not later than **June 26, 2017**

       Defendant:    Not later than **August 11, 2017**

- The parties shall have until **September 25, 2017** to complete depositions of expert witnesses, complete fact discovery, and file discovery motions.

- The parties shall have until **October 27, 2017** to file dispositive and threshold motions.

(Doc. #16, Scheduling Order at ¶¶ 3-5, 9, 10).

Pursuant to the Scheduling Order, Newfield disclosed Barry Pulliam and Robin Deferrari as expert witnesses on June 26, 2017. (Affidavit of Wade Mann, Exhibit A: Newfield's Expert Disclosures, pp. 1-5). Mr. Pulliam's disclosure included a 22 page expert report, with 205 pages of appendices showing alleged damage calculations. (*Id.* at Exhibit A of Expert Disclosures). Eighty-Eight spent a substantial amount of time and money reviewing Mr. Pulliam's report/appendices in preparation of his July 28, 2017 deposition in Houston, Texas. Mr. Pulliam's report and opinions were primarily limited to damages. (*Id.* at Exhibit A of Expert Disclosures; *see also,* Affidavit of Wade Mann, Exhibit B: Pulliam Dep. 17:18-18:25; 28:23-30:21; 51:25-52:10; 57:9-58:4; 72:20-23 (confirming he was not offering opinions on certain topics). Ms. Deferrari was disclosed as a non-retained expert. Her report discussed a number of topics but primarily focused on custom and practice in the crude oil marketing industry. (Affidavit of Wade Mann, Exhibit A: Newfield's Expert Disclosures, pp. 2-5).

On September 11, 2017, over two months after Newfield's expert disclosure deadline, Eighty-Eight received Newfield's "Rebuttal Expert Disclosures." The September disclosures named Barry Pulliam, John Lowe and Robin Deferrari as "rebuttal" experts (Affidavit of Wade Mann, Exhibit C: Newfield's Rebuttal Expert Disclosures, pp. 1-6). Mr. Pulliam's "rebuttal"

disclosure included a 21 page rebuttal report.  (Affidavit of Wade Mann, Exhibit D: Newfield's Exhibits to Rebuttal Expert Disclosures, Exhibit A).  The rebuttal report, which was only one page less than his original report, covered a wide range of topics including EIA pricing data, transportation and capacity issues, industry custom and practice, and "other evidence".  (*Id.*).  Mr. Lowe's disclosure included an 8 page rebuttal report with multiple subparts and focused primarily on his interpretation of North Dakota law and industry custom and practice.  (Affidavit of Wade Mann, Exhibit D: Newfield's Exhibits to Rebuttal Expert Disclosures, Exhibit B).  Ms. Deferrari's rebuttal report was similar to her original report.  It largely revisited her discussion of industry custom and practice. (Affidavit of Wade Mann, Exhibit C: Newfield's Rebuttal Expert Disclosures, pp. 3-6).

## ARGUMENT

District courts have the authority to set discovery deadlines and to impose sanctions when parties fail to meet those deadlines.  Fed. R. Civ. P. 16; *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).  The parties must disclose any witness who may provide expert testimony, and the disclosure must be made "at the times and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(A), (D).  Untimely expert disclosures are generally excluded by the court unless the disclosing party proves that its failure to comply with the deadline is harmless or substantially justified.  Fed. R. Civ. P. 37(c)(1) & 26(a)(2)(D);  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *Trost*, 162 F.3d at 1008 ("failure to disclose in a timely manner is equivalent to failure to disclose").  Once the relevant deadline has expired, a party may modify the scheduling order only for good cause and with the judge's consent.  Fed. R. Civ. P. 16(b)(4); *see Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948-49 (8th Cir. 2012).

**I.     The "rebuttal" expert opinions, reports and testimony of Mr. Pulliam, Mr. Lowe and Ms. Deferrari are not permitted under the Court's Scheduling Order and should be excluded as untimely.**

Following negotiation, Newfield and Eighty-Eight agreed that Newfield "shall provide the names of expert witnesses and complete reports under Rule 26(a)(2)… not later than **June 26, 2017**." (Doc. #16, Scheduling Order: stating that pursuant to Rule 26(f) the parties certify that they conferred by telephone, and agreed on the dates specified).  Rule 26(a)(2) governs both initial and rebuttal expert disclosures, and the parties did not agree to allow a separate deadline for rebuttal expert disclosures.  (*Id*.; Fed. R. Civ. P. 26(a)(2)).  Consequently, they did not build time into the agreed-upon schedule to accommodate rebuttal disclosures, agreeing to a final discovery deadline just 6 weeks after Eighty-Eight's expert disclosure deadline and only one month before the dispositive motion deadline.  The District Court gave effect to the parties' agreement, adopting the Scheduling Order and thereby ordering that the parties comply with the terms and dates they had agreed upon.  Per the parties' agreement, the Scheduling Order does not provide a separate deadline for rebuttal expert opinions.

Ignoring the terms of the Scheduling Order and the impending deadline for depositions and all other discovery, Newfield served Eighty-Eight with its "Rebuttal Expert Disclosures" and supporting exhibits on **September 11, 2017**.  These "rebuttal" disclosures were served more than two months after Newfield's **June 26, 2017** expert disclosure deadline, just two weeks before the final discovery deadline, and only a month and a half before the dispositive motion deadline**.**  (Affidavit of Wade Mann, Exhibit C: Newfield's Rebuttal Expert Disclosures, p. 1).  Newfield's rebuttal disclosure states "[i]n accordance with Federal Rule of Civil Procedure 26(a)(2) and the Court's October 26, 2016 Scheduling Order, plaintiff Newfield Production Company identifies the following" rebuttal expert witnesses.  (*Id.*).

Newfield's reliance on Rule 26(a)(2) is contrary to Eighth Circuit precedent. While Rule 26(a)(2)(D)(ii) states that parties must make rebuttal expert disclosures within 30 days after disclosure of the opinions they are intended to rebut, the Rule merely provides the default time frame for expert disclosures <u>in the absence of</u> a court approved scheduling order or a stipulation between the parties. F. R Civ. P. 26(a)(2)(D) (setting deadlines "[a]bsent a stipulation or a court order"); *see Eckelkamp v. Beste*, 315 F.3d 863, 872 (8th Cir. 2002) ("the thirty day requirement in Rule 26(a)(2)(C) [the substantially similar predecessor to 26(a)(2)(D)] only applies in the absence of other directions from the court or stipulation by the parties." (internal quotation marks omitted)); *Masler v. Marshall Fields*, No. CIV. 06-4917PAMJSM, 2007 WL 6815352, at *3–4 (D. Minn. Dec. 21, 2007) ("When the court crafted its own schedule for expert disclosures, the mechanism set forth in Rule 26 was nullified."); *Schablonentechnik v. MacDermid Graphic Arts, Inc.,* No. CIV.A. 1:02CV2585ODE, 2005 WL 5974438, at *2 (N.D. Ga. June 21, 2005) ("the default deadlines provided by the rule do not apply" when there is a court approved scheduling order); *Akeva L.L.C. v. Mizuno Corp.,* 212 F.R.D. 306, 310 (M.D.N.C. 2002) (when there is a discovery plan, "the plan controls and not the explicit provisions of Rule 26(a)(2)(C)"). Where, as here, the Scheduling Order specifically states alternate expert witness disclosure deadlines, those deadlines control. Newfield was required to disclose its experts no later than June 26, 2017, and its rebuttal expert disclosure is, therefore, untimely.

Crucially, the Scheduling Order did not set a deadline only for "initial" expert disclosures or "rebuttal" expert disclosures. Instead, it set a deadline for all of Newfield's expert disclosures under Rule 26(a)(2). Under similar circumstances, Eighth Circuit Courts have held that no separate rebuttal expert disclosures are allowed after the general disclosure deadline. *Eckelkamp*, 315 F.3d at 872 (stating "[t]he district court's case order set its management requirements <u>and</u>

did not provide for rebuttal experts, and the court was entitled to hold the parties to that order." (emphasis added)); *Bachtel v. Taser Int'l, Inc.,* No. 2:11CV69 JCH, 2012 WL 5308052, at *2 (E.D. Mo. Oct. 29, 2012) (where scheduling order did not provide for the disclosure of rebuttal experts or reports and neither party sought leave to amend the order to provide for such disclosures, the thirty-day requirement in Rule 26(a)(2)(C) did not apply). "The critical question . . . is whether the court has spoken on the subject of expert disclosures generally, not whether it has specifically substituted its own deadlines for those proposed in Rule 26(a)(2)(C)." *Masler,* 2007 WL 6815352, at *3–4 (D. Minn. Dec. 21, 2007).

In this case, the Court ordered Newfield, per Newfield's agreement with Eighty-Eight, to make all of its expert disclosures by June 26, 2017. Newfield did not make a separate deadline for rebuttal experts, nor did it ever ask to amend the Scheduling Order to allow rebuttal experts. Instead, Newfield simply made a second set of rebuttal expert disclosures of its own initiative on September 11, 2017, over two months after its disclosure deadline and just weeks before the deadline for discovery. As a result, Newfield has impermissibly allowed itself a second chance at expert disclosure and has left Eighty-Eight with insufficient time to depose the rebuttal experts Newfield has disclosed. Allowing Newfield to ignore the strict deadlines of the Scheduling Order will harm Eighty-Eight and is not justified in this case.

**II.     Newfield cannot prove that its untimely rebuttal expert disclosures were harmless or substantially justified.**

In order to make its untimely disclosures, Newfield must prove that the untimeliness of the disclosures is harmless or substantially justified. *Wegener*, 527 F.3d at 692. Newfield cannot meet this burden, because allowing the untimely disclosures will significantly prejudice Eighty-Eight.

Discovery in this case has been ongoing for nearly a year. During that time, over 20,000

documents have been produced by the parties and numerous depositions have occurred in locations ranging from Wyoming to Texas. (*See* Doc. #35, Newfield's Motion for Protective Order, at p.4). Both the time and cost devoted to this case have been substantial. Yet, with only two weeks remaining to complete fact discovery and expert depositions, Eighty-Eight received Newfield's "Rebuttal Expert Disclosure." When it served its rebuttal disclosures, Newfield was well aware that due to scheduling conflicts, Eighty-Eight still had multiple depositions to complete.[1] Specifically, Eighty-Eight made two trips to Houston to take the depositions of three individuals and Newfield's 30(b)(6) corporate deposition during the final two weeks of fact discovery. Adding further delay, Newfield refused to name a corporate representative for 17 of Eighty-Eight's 22 topics listed in its 30(b)(6) notice, and then filed a protective order with this Court. (Doc. #35, Newfield's Motion for Protective Order). This combination of events, primarily driven by Newfield, left insufficient time for Eighty-Eight to adequately review the "rebuttal" reports and schedule depositions before the September 25th cutoff.

In addition to the scheduling conflicts and insufficient time, Newfield also knew or should have known that the Scheduling Order did not contemplate rebuttal experts. Yet Newfield never approached Eighty-Eight with a proposed stipulation or asked the Court to

---

[1] Newfield knew that scheduling conflicts had pushed back Eighty-Eight's deposition dates for several Newfield representatives into the final two weeks of discovery leaving insufficient time for "rebuttal" expert discovery. For example, because of a foot injury to Newfield employee Randy Hairr, Eighty-Eight agreed, at Newfield's request, to reschedule depositions of Mr. Hairr and one other Newfield representative from the end of August until September 14th and 15th. (Affidavit of Wade Mann, Exhibit E: Email correspondence, August 8, 2017 – August 18, 2017). Then, due to the unfortunate destruction and flooding in Houston, Eighty-Eight agreed to reschedule the deposition of Larry Gregory until September 22nd, the final week of discovery. (Affidavit of Wade Mann, Exhibit F: Email correspondence, September 5, 2017). Finally, despite numerous requests, Newfield failed to schedule the deposition of John Jasek, its vice president of business, until September 21st, also the last week of discovery. (Affidavit of Wade Mann, Exhibit G: Email correspondence, August 7, 2017 – August 15, 2017; and Exhibit F where on September 5th, Newfield confirms the deposition date.).

amend the Scheduling Order.[2] Had Newfield timely sought leave to amend, and the Court granted its request, Eighty-Eight would certainly have asked for additional time to depose Newfield's experts, would likely have set a date for its own rebuttal experts, and would undoubtedly have requested an extension of time for both discovery and dispositive motions. Similar requests would have likely been made if Newfield had proposed a stipulation; moreover, such approach would have allowed Eighty-Eight to plan accordingly and eliminate the unnecessary expense of additional travel. However, Newfield did not seek leave to amend the Scheduling Order or propose a stipulation, and has failed to offer any reason why its disregard for the expert disclosure deadline was substantially justified. The fact is, there were no grounds for amending the Scheduling Order then, or now.

Rather than follow the rules, Newfield, like it has throughout this case, ignored Eighth Circuit law and acted by its own fiat and directive demanding the number of Eighty-Eight's experts, as well as depositions dates for those experts, more than one month before Eighty-Eight's expert disclosure deadline. (Affidavit of Wade Mann, Exhibit H: Email correspondence, September 5, 2017). When Eighty-Eight refused to disclose the identity and number of experts a month prior to its deadline, Newfield alleged that it needed to know the experts for its "reply, if any" and to get its "rebuttal report done, if any." (*Id.*). The fact Newfield was contemplating its "rebuttals" more than a month before Eighty-Eight's discovery deadline seems suspect to say the least. Regardless, Newfield failed to confirm that it intended to disclose "rebuttal" experts, "if any", it did not offer a proposed stipulation for rebuttal expert dates and it failed to seek leave from the Court to modify the Scheduling Order.

Eighty-Eight has been harmed by Newfield's untimely disclosure. In addition to the lack

---

[2] Also note, in Newfield's Responses to Eighty-Eight's First Set of Discovery Requests, Newfield stated it "will disclose the names of its expert witnesses in accordance with the Court's scheduling order." (Affidavit of Wade Mann, Exhibit I: Newfield's Responses to Eighty-Eight's First Set of Discovery Requests, p. 7).

of adequate time to complete rebuttal discovery, the time and expense required to schedule another trip to Houston for rebuttal expert depositions at this point in the case would be significant. To date, Eighty-Eight has made four trips to Houston and one trip to Denver to depose Newfield representatives. Requiring Eighty-Eight to prepare for and take depositions of Newfield's rebuttal experts at this juncture will cause additional expense and interfere with Eighty-Eight's dispositive motion briefing. Given the prejudice this will cause Eighty-Eight and the opportunities Newfield had to make its disclosure without prejudicing Eighty-Eight, Newfield cannot prove that its untimely disclosure of the "rebuttal" opinions of Barry Pulliam, John Lowe, and Robin Deferrari will be substantially justified or harmless. Furthermore, during a September 13, 2017 phone call, Eighty-Eight informed Newfield of its plan to file this Motion and, in the event this Motion is denied, requested an extension of time to depose the "rebuttal" experts; Newfield expressly refused Eighty-Eight's request for an extension of time to take depositions of Newfield's "rebuttal" experts pending the outcome of this Motion. Therefore, if the Court denies this Motion, then Eighty-Eight will have no choice except file a motion seeking an extension of time to depose Newfield's "rebuttal" experts.[3]

### III. Newfield's untimely "rebuttal" disclosures exceed the scope of rebuttal.

Even if Newfield's disclosures had been timely and did not prejudice Eighty-Eight, the reports of Newfield's "rebuttal" experts should not be allowed because they exceed the scope of

---

[3] A scheduling order may be modified for good cause. Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Deadwood Canyon Ranch, LLP v. Fidelity Exploration & Production Co.*, No. 4:10-cv-081, 2013 WL 11971254 (D.N.D. July 15, 2013) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.2d 709, 716 (8th Cir. 2008)). Despite Eighty-Eight's diligence and because of Newfield's late disclosures, Eighty-Eight did not have sufficient time to depose Barry Pulliam, John Lowe, and Robin Deferrari about their "rebuttal" opinions before the discovery deadline expired. Because Eighty-Eight, despite its diligence, did not have sufficient opportunity to depose Newfield's rebuttal experts, Eighty-Eight will request, in the event Newfield's rebuttal expert opinions are admissible, that the Court extend the deadline for Eighty-Eight to take the rebuttal experts' depositions.

proper rebuttal under federal law.

> **a. Mr. Pulliam's "rebuttals" are improperly used to bolster his original disclosures and do not counter new, unforeseen facts or solely contradict Eighty-Eight's experts.**

Rule 26(a)(2)(D)(ii) requires that rebuttal disclosures and testimony only contain opinions offered "solely to contradict or rebut" other expert testimony. "The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quoting *Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir.1999)). The only acceptable function of rebuttal evidence "is to explain, repel, counteract or disprove evidence of the adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005) (internal quotation marks omitted). As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief. *Id.* (citing *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir.1991) ("rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief").

Mr. Pulliam's "rebuttal" report did not counter new, unforeseen facts or solely contradict Eighty-Eight's experts. Rather, Mr. Pulliam's "rebuttal" report improperly bolsters and supplements his original opinion. Newfield named Mr. Pulliam as its sole retained expert on June 26, 2017. Mr. Pulliam's disclosure included a 22 page expert report, with numerous appendices attached. (Affidavit of Wade Mann, Exhibit A: Newfield's Expert Disclosures, Exhibit A). Mr. Pulliam's original opinions were limited almost exclusively to damage calculations. (*Id.*). During his deposition, Mr. Pulliam testified on multiple occasions that he had the requisite knowledge and facts to opine on certain subjects, including the meaning of industry terms in the Sales Agreement, but had not been asked to do so. (*See,* Affidavit of Wade

Mann, Exhibit B: Pulliam Dep. 17:18-18:25; 28:23-30:21; 51:25-52:10; 57:9-58:4; 72:20-23).

Mr. Pulliam's rebuttal report was disclosed on September 11, 2017. The report is 21 pages, only one page less than his original report, and covers topics that Mr. Pulliam said he could have and did opine on in his original report. (Affidavit of Wade Mann, Exhibit D: Newfield's Exhibits to Rebuttal Expert Disclosures, Exhibit A. pp. 4 & 5). For example, Mr. Pulliam relies on "EIA-reported prices" "from first purchasers of North Dakota crude oil" as "additional corroboration" for the findings in his original report. (Affidavit of Wade Mann, Exhibit D: Newfield's Exhibits to Rebuttal Expert Disclosures, Exhibit A, p. 14). The "additional corroboration" section offers supplemental support for his initial opinions while claiming to be a "rebuttal" of Lesa Adair's opinion; yet, nowhere in Ms. Adair's expert report does she rely on the EIA-reported prices for first purchasers of North Dakota Crude Oil and the EIA data and facts relied on are certainly not new or unforeseen. (*See* Affidavit of Wade Mann, Exhibit J: Lesa Adair's Expert Report). Mr. Pulliam likewise includes a section entitled "Other Evidence that Eighty-Eight's Prices Were Not Competitive," which is entirely composed of facts and information that had been readily available to Mr. Pulliam when he drafted his original report and not utilized whatsoever by either he or Ms. Adair. (Affidavit of Wade Mann, Exhibit D: Newfield's Exhibits to Rebuttal Expert Disclosures, Exhibit A, p 18). As another example, Mr. Pulliam compares prices utilizing a 3-mile radius, as opposed to his original 5-mile radius. (*Id.* at 19). Nowhere in Ms. Adair's report does she suggest that a three-mile radius is proper, and Mr. Pulliam could have easily performed this analysis in his initial report. (*See* Affidavit of Wade Mann, Exhibit J: Lesa Adair's Expert Report).

    **b. Newfield improperly used its rebuttal disclosure as an extension of its disclosure deadline.**

Newfield began demanding the number of Eighty-Eight's experts, as well as depositions

dates for those experts as early as June 10, 2017, more than one month before Eighty-Eight's August 11, 2017 expert disclosure deadline. (Affidavit of Wade Mann, Exhibit H: Email correspondence, September 5, 2017). When Eighty-Eight refused to disclose the identity and number of experts a month prior to its deadline, Newfield alleged that it needed to know the experts for its "reply, if any" and to get its "rebuttal report done, if any." (*Id.*). The fact Newfield was contemplating and working on its "rebuttals" a month before Eighty-Eight's discovery deadline suggests that Newfield intended to improperly use its "rebuttal" disclosure as an extension to disclose experts.

Rebuttal disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996); *see also People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1192 (S.D. Cal. 2016) ("A party with the burden of proof on an issue should not be allowed to secretly prepare an army of rebuttal experts. If they were allowed to do so, their work would not be subject to a direct response from any opposing expert. This immunity, combined with the element of surprise, is simply unfair." (internal quotation marks and alterations omitted)). "Where a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court." *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17–18 (D.D.C. 2013).

Mr. Lowe, unlike Mr. Pulliam, was not disclosed by Newfield on June 26, 2017; he was first named as an expert on September 11, 2017. Mr. Lowe's report was purportedly offered to rebut the opinions of Owen Anderson. (Affidavit of Wade Mann, Exhibit C: Newfield's Rebuttal Expert Disclosures, pp. 2-3). Mr. Lowe, however, offers "rebuttal" opinions on topics

that were never mentioned by Owen Anderson. For example, Mr. Lowe offers opinions on installment contracts under the U.C.C. and the anticipatory repudiation standard under North Dakota law, with numerous legal citations included. (Affidavit of Wade Mann, Exhibit D: Newfield's Exhibits to Rebuttal Expert Disclosures, Exhibit B, pp. 3, 4, 6, 7).

Interestingly, the only time the terms installment contracts and anticipatory repudiation came up in this case was while Newfield asked questions on these topics during Owen Anderson's September 1, 2017 deposition, which took place only 10 days before Newfield disclosed Mr. Lowe as an expert. (Affidavit of Wade Mann, Exhibit K: Anderson Depo., 93:12-94:21). Had Newfield wanted to disclose an expert on installment contracts and anticipatory repudiation, among other things, it could have done so in a timely and proper manner. Likewise, Mr. Lowe offers opinions on duties owed to working interest owners and industry custom and practice. (Affidavit of Wade Mann, Exhibit D: Newfield's Exhibits to Rebuttal Expert Disclosures, Exhibit B, pp. 3-7). This topic has been raised numerous times in written discovery and during depositions of Newfield employees. It was first raised during the May 10, 2017 deposition of Charles Laudeman. Newfield was well aware of this issue and could have named an expert on or before its disclosure deadline.

The relevant facts and information offered in support of Mr. Lowe's opinions were known by the parties well prior to Newfield's initial expert disclosures and the expert opinions that Newfield's expert purports to rebut. Disguising these topics as rebuttal, months after their disclosure deadline was an improper attempt by Newfield to extend its disclosure deadline and to limit Eighty-Eight's ability to explore the experts' opinions during discovery.

## **CONCLUSION**

Based on the foregoing reasons, Eighty-Eight respectfully requests that the Court exclude

Newfield's rebuttal expert opinions, reports and testimony. Failure to do so will prejudice Eighty-Eight because it was left with insufficient time to depose Newfield's rebuttal experts between the unexpected September 11, 2017 disclosure and the September 25, 2017 deadline to depose experts.

Dated this 25th day of September, 2017.

        CROWLEY FLECK PLLP

/s/ Jeffery J. Oven
JEFFERY J. OVEN (#5005)
joven@crowleyfleck.com
490 N. 31st St., Suite 500
P. O. Box 2529
Billings, MT 59103
(406) 252-3441

WADE C. MANN (#05871)
wmann@crowleyfleck.com
100 West Broadway, Suite 250
P.O. Box 2798
Bismarck, ND 58502
(701) 223-6585

URIAH J. PRICE (#07173)
uprice@crowleyfleck.com
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719
(406) 522-4548

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

I certify that on September 13, 2017, as well as several other dates, my co-counsel conferred via phone with counsel for Plaintiff Newfield in an attempt to resolve this discovery dispute as well as several others, but the parties were unable to reach an agreement. I further certify that on September 11, 2017, a telephonic conference with Magistrate Judge Miller was held to address a number of outstanding discovery disputes between the parties. Due to time constraints, all of the outstanding discovery issues did not get presented to Magistrate Judge Miller. I contacted Magistrate Judge Miller's chambers on September 12, 2017, explaining to Magistrate Judge Miller's law clerk Zachary Eiken that outstanding discovery issues remained between the parties that were not addressed on the September 11th call due to the time constraints. I inquired whether an additional call with the judge was required to address the outstanding discovery issues prior to filing a discovery motion. Mr. Eiken's preliminary response on the September 12th call was that an additional call with Magistrate Judge Miller would probably not be necessary but he would follow-up with the judge to confirm. On September 20, 2017, I again contacted chambers and spoke with Mr. Eiken to inquire whether he had spoken with Magistrate Judge Miller about the necessity of another call with Magistrate Judge Miller and the parties before a discovery motion on the outstanding issues could be filed. Mr. Eiken indicated that he had spoken to Magistrate Judge Miller and confirmed that another call with Magistrate Judge Miller and the parties would not be necessary prior to the filing of a discovery motion on the outstanding issues.

/s/ Wade C. Mann
WADE C. MANN (#05871)